Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN BROKING, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| RATTLER MIDSTREAM LP, STEVEN WEST, TRAVIS STICE, KAES VAN'T HOF, LAURIE ARGO, and ARTURO VIVAR, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Brian Broking ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this unitholder action against Rattler Midstream LP ("Rattler" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Diamondback Energy, Inc. ("Parent" or "Diamondback") as a result of an unfair process, and to enjoin an upcoming unitholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a May 15, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Partnership Agreement"). Under the terms of the Partnership Agreement, Rattler common units will be extinguished and will be converted into the right to receive 0.113 of a share of common stock of Diamondback.

3.      Thereafter, on June 13, 2022, Diamondback filed a Registration Statement on Form S4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no market check for potentially interested third parties was conducted and in which no special committee of independent and disinterested directors was created to run the sales process.

5.      In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's Common Unitholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's Common Unitholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially

deficient Registration Statement on June 13, 2022 with the SEC in an effort to convince Plaintiff to vote in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Rattler, provided by Rattler management to the Board and the Board's financial advisor Evercore Group L.L.C. ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore if any, and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

9.      Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a Rattler unitholder.

10.      Defendant Rattler owns, operates, develops, and acquires midstream and energy-related infrastructure assets in the Midland and Delaware Basins of the Permian Basin. Rattler is incorporated in Delaware and has its principal place of business at 500 West Texas, Suite 1200, Midland, TX. Shares of Rattler common units are traded on the NasdaqGS under the symbol "RTLR".

11.      Defendant Steven West ("West") has been a Director of the Company at all relevant times. In addition, West serves as the Chairman of the Company's Board.

12.      Defendant Travis Stice ("Stice") has been a director of the Company at all relevant times. In addition, Stice serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Kaes Van't Hof ("Hof") has been a director of the Company at all relevant times.

14.     Defendant Laurie Argo ("Argo") has been a director of the Company at all relevant times.

15.     Defendant Arturo Vitar ("Vitar") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 11 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Diamondback is an independent oil and natural gas company, focuses on the acquisition, development, exploration, and exploitation of unconventional and onshore oil and natural gas reserves in the Permian Basin in West Texas. Diamondback is a Delaware Company and has its headquarters in Midland, Texas.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NasdaqGS Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

21.     Rattler Midstream LP owns, operates, develops, and acquires midstream and energy-related infrastructure assets in the Midland and Delaware Basins of the Permian Basin. The company provides crude oil and water-related midstream services. As of December 31, 2021, it owned and operated 866 miles of crude oil, sourced water, and produced water gathering pipelines on acreage that overlays Diamondback Energy, Inc.'s core Midland and Delaware Basin development areas. Rattler Midstream GP LLC serves as the general partner of the company. The company was formerly known as Rattler Midstream Partners LP. The Company was incorporated in 2018 and is based in Midland, Texas.

22.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the February 23, 2022 press release announcing its 2021 Q4 and year-end financial results, the Company highlighted net income of $44.5 million as well as consolidated Adjusted EBITDA of $80.8 million.

23.     Speaking on the positive results, CEO of Rattler said, "Rattler closed the year on a high note, with a strong operational quarter in terms of volumes, operating expense control and Free Cash Flow."

24.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Rattler.  Clearly, based upon the positive outlook, the Company is likely to have future success.

25.     Despite this upward trajectory, the Individual Defendants have caused Rattler to enter into the Proposed Transaction without providing requisite information to Rattler unitholders such as Plaintiff.

***The Flawed Sales Process***

26.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27.     Of significant import, it does not appear that a market check for potentially interested third parties was conducted by the Board or by anyone on its behalf during the sales process. Rather, it appears that the goal from the outset was a transaction with Diamondback, with the Registration Statement indicating that such talks had existed between the Company and Parent for an extensive period of time.

28.     Furthermore, the Proposed Transaction fails to contain a collar mechanism to ensure the merger consideration remains in a realm of reasonableness in the event of a dramatic change in Diamondback stock price prior to the consummation of the Proposed Transaction.

29.     The Registration Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Diamondback and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

31.     On May 16, 2022, Rattler and Diamondback issued a joint press release announcing

the Proposed Transaction.  The press release stated, in relevant part:

> **MIDLAND, Texas, May 16, 2022 (GLOBE NEWSWIRE) --** Diamondback
> Energy, Inc. (NASDAQ: FANG) ("Diamondback") and Rattler Midstream LP
> (NASDAQ: RTLR) ("Rattler") today announced that, on May 15, 2022, they
> entered into a definitive agreement for Diamondback to acquire all of the publicly
> held common units representing the limited partner interests in Rattler not already
> owned by Diamondback and its subsidiaries. The agreement provides for an all-
> stock transaction whereby each public unitholder of Rattler would receive 0.113 of
> a share of common stock in Diamondback in exchange for each Rattler common
> unit owned, an exchange ratio that implies a premium of 17.3% for Rattler common
> units based on the closing prices of Rattler's common units and Diamondback's
> common stock as of May 13, 2022, and a premium of 9.3% based on Rattler's and
> Diamondback's 30 day volume-weighted average trading price as of the same date.
>
> "The energy landscape has transformed dramatically since Rattler was taken public
> in 2019, and we believe this agreement to merge companies is in the best interests
> of both Diamondback and Rattler stakeholders," stated Travis Stice, Chief
> Executive Officer of Diamondback and of the general partner of Rattler. "This
> merger will allow both companies to benefit from the simplicity and scale of the
> combined entity going forward."
>
> The Conflicts Committee of the board of directors of Rattler's general partner,
> composed of independent directors, unanimously approved the merger agreement
> after consultation with its independent legal and financial advisors. The merger
> agreement was subsequently unanimously approved by the board of directors of
> Rattler's general partner. Diamondback E&P LLC, a wholly owned subsidiary of
> Diamondback and the holder of a majority of the outstanding units of Rattler, has
> voted its units to approve the transaction. The transaction is expected to close in the
> third quarter of 2022, subject to customary closing conditions.

**Potential Conflicts of Interest**

32.     The breakdown of the benefits of the deal indicate that Rattler insiders are the

primary beneficiaries of the Proposed Transaction, not the Company's public Unitholders such as

Plaintiff.  The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as

a public Unitholder of Rattler.

33.     Company insiders, currently own large, illiquid portions of Company units all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public Unitholders of the Company.  Notably, while the Registration Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name and Address of Beneficial Owner | Number of shares of Common Stock and Nature of Diamondback Beneficial Ownership | Percent of Class | Number of Common Units and Nature of Rattler Beneficial Ownership | Percent of Class |
|---|---|---|---|---|
| The Vanguard Group | 20,662,136 | 11.8% | — | — |
| BlackRock, Inc. | 13,938,631 | 7.9% | — | — |
| State Street Corporation | 11,211,655 | 6.4% | — | — |
| The Blackstone Group Inc. | 10,590,033 | 6.0% | — | — |
| Cardinal Capital Management, LLC | — | — | 3,199,594 | 8.3% |
| ClearBridge Investments, LLC | — | — | 3,086,248 | 8.0% |
| Capital World Investors | — | — | 2,859,750 | 7.4% |
| Macquarie Group Limited | — | — | 2,269,273 | 5.9% |
| Travis D. Stice | 398,543 | * | 132,281 | * |
| Matthew Kaes Van't Hof | 38,817 | * | 406,884 | 1.1% |
| Teresa L. Dick | 49,757 | * | 27,107 | * |
| Matt Zmigrosky | 16,459 | * | 11,339 | * |
| Steven E. West | 6,191 | * | 27,100 | * |
| Vincent K. Brooks | 5,400 | * | — | — |
| Michael P. Cross | 12,264 | * | — | — |
| David L. Houston | 16,764 | * | — | — |
| Stephanie K. Mains | 5,400 | * | — | — |
| Mark L. Plaumann | 17,364 | * | — | — |
| Melanie M. Trent | 8,804 | * | — | — |
| Laurie H. Argo | — | — | 17,225 | * |
| Arturo Vivar | — | — | 30,975 | * |
| Directors and Executive Officers of Diamondback as a Group (14 persons) | 610,974 | * | 604,711 | 1.6% |
| Directors and Executive Officers of Rattler as a Group (7 persons) | 509,767 | * | 652,911 | 1.7% |

34.     Additionally, Company insiders, currently own large amounts of company options, restricted unit units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public Unitholders of the Company.  Notably, while the Registration Statement provides some information, it does not provide the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction.

35.     The Registration Statement also fails to adequately disclose communications

regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's Unitholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Rattler, Plaintiff or Company Unitholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

37.     On June 13, 2022, the Rattler Board and Diamondback caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company Unitholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   The specific reason no market check for potentially interested third parties was conducted by the Board or by anyone on the Board's behalf;

b.   Whether the confidentiality agreements entered into by the Company with

Diamondback differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. Specific information as to why the inclusion of a collar mechanism in the Proposed Transaction was not required by the Board;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Diamondback, would fall away; and

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company Unitholders.

*Omissions and/or Material Misrepresentations Concerning Rattler and Diamondback's Financial Projections*

39. The Registration Statement fails to provide material information concerning financial projections for Rattler and Diamondback provided by Rattler and Diamondback management to the Board and Evercore and relied upon by Evercore in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

40. The Registration Statement should have, but fails to provide, certain information in

the projections that Rattler and Diamondback management provided to the Board and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

41.     With regard to the *Certain Unaudited Financial Projections of Diamondback* scenarios prepared by Diamondback Management, the Registration Statement fails to disclose material line items in each scenario for the following metrics:

    a. Consolidated Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income (loss) attributable to Diamondback, interest expense, depreciation, depletion, amortization and accretion, non-cash equity-based compensation expense, and provision for (benefit from) income taxes, income (loss) related to equity method investments;

    b. Consolidated Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: cash flow from operating activities and capital expenditures excluding acquisitions/divestitures

42.     With regard to the *Certain Unaudited Financial Projections of Rattler* scenarios prepared by Rattler Management, the Registration Statement fails to disclose material line items in each scenario for the following metrics:

    a. Consolidated Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income (loss)

attributable to Rattler plus depreciation, amortization and accretion on assets and liabilities of OpCo, proportional depreciation, interest expense related to equity method investments, proportional impairments and abandonments related to equity method investments, non-cash unit-based compensation expense, impairment and abandonments, (gain) loss on disposal of assets, provision for income taxes and other;

b.   Consolidated Capital Expenditures, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net additions to property, plant and equipment and acquisitions and contributions to equity method investments;

c.   Consolidated Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: cash flow from operating activities net of additions to property, plant and equipment and contributions and acquisitions related to equity method investments.

43.   The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44.   This information is necessary to provide Plaintiff in his capacity as a Company Unitholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45.   Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

46.     In the Registration Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47.     With respect to the *Discounted Cash Flow Analysis* of Rattler, the Registration Statement fails to disclose the following:

    a.  The Weighted Average Cost of Capital for the Company;

    b.  The inputs, metrics, and assumptions used to determine a cost of equity discount rate range of 9.0% to 10.0%;

    c.  The inputs, metrics, and assumptions used to determine a terminal yield range of 7.0% to 9.0%

    d.  The inputs, metrics, and assumptions used to determine a discount rate range of 9.5% to 10.5%;

    e.  The inputs, metrics, and assumptions used to determine a range of EBITDA multiples of 7.0x to 8.5x;

    f.  The terminal period EBITDA utilized for the Company;

    g.  The inputs, metrics, and assumptions used to determine a range of perpetuity growth rates of 0.5% to 1.5%;

    h.  The range of values for the equity method investments utilized;

    i.  The range of enterprise values calculated; and

      j.   The number of Common Units outstanding as of March 31, 2022.

48.     With respect to the *Peer Group Trading Analysis* of Rattler, the Registration Statement fails to disclose the following:

      a.   The inputs and assumptions used to calculate Enterprise Value/2022E EBITDA for all relevant Benchmarks in regards to each company compared, including specifically, market value of equity, preferred equity (as applicable), debt, cash, and estimated EBITDA for the calendar year 2022;

      b.   The range of Enterprise Value/2022E EBITDA multiples calculated for all relevant Benchmarks;

      c.   The range of Enterprise Value/2023 EBITDA multiples calculated for all relevant benchmarks;

      d.   The inputs and assumptions for all relevant Benchmarks used to calculate Price/2022 Distributable Cash Flow for each company compared, including specifically, distributable cash flow for the calendar year 2022 and projected Common Units at year end, 2022;

      e.   The inputs and assumptions for all relevant Benchmarks used to calculate Price/2023 Distributable Cash Flow for each company compared, including specifically, distributable cash flow for the calendar year 2023 and projected Common Units at year end, 2023;

      f.   The range of values used for Rattler's equity method investments;

      g.   The balance of debt and Cash for the Company on March 31, 2022;

      h.   The number of Common Units outstanding as of March 31, 2022 for the Company;

49.     Regarding the *Sum-of-the-Parts Peer Group Trading Analysis* of Rattler, the Registration Statement fails to disclose the following:

a.  The enterprise value range of Rattler estimated for purposes of this analysis;

b.  The input determined from aggregating the implied enterprise value ranges of each segment;

c.  Rattler's net debt as of March 31, 2022;

d.  Rattler's net cash as of March 31, 2022;

e.  The number of Rattler Common Units as of March 31;

f.  With regard to the Produced water Gathering & Disposal Benchmark:

   i.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA of 7.0x-8.5x;

   ii.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA of 7.0x-8.5x;

g.  With regard to the Fresh Water Benchmark:

   i.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA of 6.5x-8.5x;

   ii.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA of 4.5x-6.5x;

h.  With regard to the Crude Oil Gathering Benchmark:

   i.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA of 8.0x-9.5x;

   ii.  The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA of 7.0x-8.5x;

    i.   With regard to the Real Estate Benchmark:

        i.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA of 12.0x-14.0x;

        ii.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA of 12.0x-14.0x;

    j.   The inputs, metrics, and assumptions used to determine weighted average EBITDA multiples of 7.3x to 8.9x for year 2022;

    k.   The inputs, metrics, and assumptions used to determine weighted average EBITDA multiples of 6.0x to 7.6x for year 2023;

    l.   The projected corporate G&A expenses for years 2022 and 2023; and

    m.   The range of enterprise values for Corporate G&A calculated.

50.    Regarding the *Sum-of-the-Parts Precedent M&A Transaction Analysis* of Rattler, the Registration Statement fails to disclose the following:

    a.   Regarding the Produced Water Gathering and Disposal Transactions:

        i.   The value of each transaction compared;

        ii.   The exact date on which the transaction was announced; and

        iii.   The inputs, metrics, and assumptions used to determine a range of implied Enterprise Value to EBITDA multiples of 6.0x to 8.0x;

    b.   Regarding the Fresh Water Transactions:

        i.   The value of each transaction compared;

        ii.   The exact date on which the transaction was announced; and

        iii.   The inputs, metrics, and assumptions used to determine a range of implied Enterprise Value to EBITDA multiples of 7.0x to 9.0x;

    c.  Regarding the Crude Oil Gathering Transactions:

        i.  The value of each transaction compared;

        ii.  The exact date on which the transaction was announced; and

        iii.  The inputs, metrics, and assumptions used to determine a range of implied Enterprise Value to EBITDA multiples of 8.5x to 10.5x;

    d.  Regarding the Crude Oil Gathering Transactions:

        i.  The value of each transaction compared;

        ii.  The exact date on which the transaction was announced; and

        iii.  The inputs, metrics, and assumptions used to determine a range of relevant implied cap rates to enterprise value of 6.5% to 5.5%;

    e.  Regarding the Corporate G&A;

        i.  The inputs, metrics, and assumptions used to determine a weighted average EBITDA multiple range of 7.3x to 8.9x for 2022 and 6.0x to 7.6x for 2023; and

        ii.  The range of enterprise values derived.

51.    Regarding the *Premiums Paid Analysis* of Rattler, the Registration Statement fails to disclose the following:

    a.  The value of each transaction compared;

    b.  The exact buy-in premium for each transaction;

52.    With respect to the *Discounted Cash Flow Analysis* of Diamondback, the Registration Statement fails to disclose the following:

    a.  The inputs, metrics, and assumptions used to determine a range of discount rates of 9.0% to 10.0%;

b.  The inputs, metrics, and assumptions used to determine a range of EBITDA multiples of 4.5x to 5.5x;

c.  Diamondback's terminal period EBITDA;

d.  The inputs, metrics, and assumptions used to determine a range of perpetuity growth rates of -0.25% to 0.25%;

e.  The range of enterprise values calculated;

f.  The value of Debt as of March 31, 2022;

g.  The value of Cash as of March 31, 2022;

h.  The value of noncontrolling interest in Viper based on the market value as of May 13, 2022 of units not owned by Diamondback or its affiliates as of March 31, 2022;

i.  The value of Diamondback's noncontrolling interest in Rattler; and

j.  The number of shares of Diamondback Common Stock outstanding as of March 31, 2022.

53.  With respect to the *Peer Group Trading Analysis* of Diamondback, the Registration Statement fails to disclose the following:

a.  The inputs and assumptions used to calculate Enterprise Value/2022E EBITDA in regard to each company compared, including specifically, Enterprise Value and estimated EBITDA for the calendar year 2022;

b.  The inputs and assumptions used to calculate Price/2022 Cash Flow per Share in regard to each company compared, including specifically, share price, operating cash flow, and capital expenditures for the calendar year 2022;

c.  The inputs and assumptions used to calculate Price/2022 Cash Flow per Share

in regard to each company compared, including specifically, share price, operating cash flow, and capital expenditures for the calendar year 2023;

   d.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA multiples of 4.5x—5.5x;

   e.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA multiples of 4.8x—5.8x;

   f.   The inputs, metrics, and assumptions used to determine a range of Price/2022 Cash Flow per Share multiples of 5.5x-7.0x;

   g.   The inputs, metrics, and assumptions used to determine a range of Price/2023 Cash Flow per Share multiples of 6.5x-8.0x;

54.   With respect to the *Sum-of-the-Parts—Peer Group Trading Analysis* of Diamondback, the Registration Statement fails to disclose the following:

   a.   The inputs and assumptions used to calculate Enterprise Value/2022E EBITDA in regard to each company compared, including specifically, Enterprise Value and estimated EBITDA for the calendar year 2022;

   b.   The inputs and assumptions used to calculate Enterprise Value/2022E EBITDA in regard to each company compared, including specifically, Enterprise Value and estimated EBITDA for the calendar year 2023;

   c.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2022 EBITDA multiples of 4.5x—5.5x; and

   d.   The inputs, metrics, and assumptions used to determine a range of Enterprise Value/2023 EBITDA multiples of 5.0x—6.0x.

55.   These disclosures are critical for Plaintiff to be able to make an informed decision

on whether to vote in favor of the Proposed Transaction.

56.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a Unitholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Rattler Unitholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Registration Statement with the intention of soliciting unitholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

64.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his units in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the unitholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company unitholder.

67.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Rattler's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of Rattler within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Rattler to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Rattler and all of its employees. As alleged above, Rattler is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 20, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*